UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

Case No.: 15-cv-827

WALTER WEBER and ELKE WEBER, On behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

VOLKSWAGEN GROUP OF AMERICA, INC.,

Defendant.

**CLASS ACTION COMPLAINT**

Plaintiffs, by and through counsel, and on behalf of themselves and all others similarly situated, allege as follows against Defendant:

## NATURE OF THE ACTION

1. Plaintiffs bring this class action complaint on behalf of themselves and a class of consumers who purchased any of the thousands of diesel Volkswagen and Audi vehicles sold in the State of North Carolina since 2009 containing so-called "defeat devices" (the "Class Vehicles").

2. Volkswagen Group of America, Inc. (hereinafter "VW" or "Defendant") marketed the Class Vehicles as possessing environmentally friendly qualities including extremely high fuel efficiency and very low emissions while, unlike other "green" vehicles, still possessing high performance. VW did not manufacture the Class Vehicles with the attributes they advertised and represented to consumers.

3. The market for environmentally-friendly, "green" vehicles has surged in recent years. Consumers are often faced with a tradeoff, however: power and fuel economy for lower emissions. When VW introduced its supposedly "clean diesel" vehicles in the late 2000s as providing fuel economy and high performance, while also reducing emissions, customers were invited to test drive the car, to appreciate its performance before purchase. Customers paid for the TDI diesel engines at a higher price than VW's non-clean diesel corresponding model.

4. However, instead of manufacturing vehicles with the attributes advertised and represented to customers, VW developed a so-called "defeat device," software that made it seem as though their vehicles had low emissions and excellent fuel economy in addition to the desirable power for testing purposes, when in fact the vehicles did not. VW's advertisements and representations to consumers regarding the vehicles being "clean diesel" were knowingly incorrect.

5. Rather than focusing its significant resources and capabilities on designing and manufacturing a "clean diesel" engine, VW developed illegal software that identifies when a vehicle is being subjected to emissions testing and then, and only then, activates a full emissions control system. During this testing, the Class Vehicles are operating within the proper emissions standards, but, unbeknownst to consumers, do not perform well otherwise, having less desirable fuel efficiency and reduced performance. Upon completion of the test, the software reverts to a "road calibration" mode, eliminating various emissions controls and regaining fuel efficiency and power. When the Class Vehicles are driven as opposed to merely being emissions tested, they emit significantly

higher levels of pollutants, up to forty (40) times the levels permitted under the Clean Air Act.

6. Although investigations are ongoing, according to the United States Environmental Protection Agency ("EPA") and the latest reports, the "defeat device" was installed in at least the following diesel models of VW vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2014 Jetta SportWagen TDI; MY 2012-2015 VW Beetle; MY 2013-2015 VW Beetle Convertible; MY 2010-2015 VW Golf; MY 2015 VW GolfSportWagen TDI; MY 2012-2015 VW Passat; and MY 2010-2015 Audi A3.

7. As a result of VW's false advertising and representations, VW sold or leased nearly 500,000 vehicles in the United States, including thousands within the State of North Carolina, that purported to be environmentally friendly, but in fact were not. VW's blatant misrepresentations to consumers would have continued unabated had a university study not called the emissions levels into question, leading the EPA and other agencies to investigate the validity of VW's emissions test results. During these investigations, VW continued to misrepresent its emissions testing process, falsely informing government investigators that the university studies did not accurately reflect the characteristics of the Class Vehicles. Only very recently did VW finally admit that not only had been lying to consumers for years, it even lied to investigators to conceal its misconduct.

8. The EPA's findings thus far are summarized in a Notice of Violation ("NOV") attached to this Complaint as Exhibit A.

9. VW deliberately hid from customers that the diesel engines actually released greater levels of nitrogen oxide (NOx) than labeled, or even permitted by law. The full results of

VW's deception are not yet clear, but at present, the Plaintiffs and unnamed class members have suffered injury as a result of paying a premium for supposed clean diesel engines that was not warranted. Second, these cars cannot be presently sold until the "defeat device" software has been removed and replaced. Third, the resale value for these vehicles has plummeted, with dealerships stating they cannot be sold, and future customers reluctant to buy another VW diesel product after this global scandal. Fourth, the eventual software fix that will make the diesel engines perform in accordance with federal and state law will assuredly reduce the power and fuel economy of the cars, and thereby also reduce resale value. In short, Plaintiffs and those similarly situated did not receive the cars they bargained for and VW should be held accountable for its deliberate deception.

10. Plaintiffs bring this suit on behalf of themselves and other current and former owners and current and former lessees of the Class Vehicles.

**PARTIES**

11. Plaintiffs Walter Weber and Elke Weber (hereinafter "Plaintiffs" or "Mr. and Mrs. Weber") are citizens and residents of Guilford County, North Carolina and they appear herein in their individual capacity and as representatives of the class more fully set forth herein.

12. Upon information and belief, Defendant VW is a New Jersey corporation licensed to do business in the State of North Carolina by the North Carolina Secretary of State.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Plaintiffs contend that there are at least 100 members in the proposed class, the

aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action which Defendant Volkswagen Group of America, Inc. is a citizen of different jurisdictions from members of the proposed class, including Plaintiffs Walter Weber and Elke Weber.

14. This Court may exercise jurisdiction over VW because Plaintiffs purchased their VW vehicle new at a VW dealership in this District and VW has sufficient minimum contacts in this District; and VW intentionally avails itself of the markets within North Carolina through the promotion, sale, marketing, and distribution of its vehicles, including the vehicles that are the subject of this Complaint, thus rendering the exercise of jurisdiction by this Court proper and necessary.

15. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Plaintiffs reside in this District.

**FACTUAL ALLEGATIONS**

16. The United States, through the EPA, has passed and enforced laws and regulations aimed at protecting citizens and the environment from pollution, particularly chemicals and agents dangerous to humans. In order to sell vehicles in the United States, automobile manufacturers must adhere to these laws and regulations.

17. Specifically, in order to sell vehicles in the United States, vehicle manufacturers must have a certificate of conformity issued by the EPA under the Clean Air Act, 42 U.S.C. §§ 7401-7671q. Vehicles with defeat devices cannot receive such certification and therefore cannot be sold legally within the United States.

18. In violation of the EPA's laws and regulations, VW manufactured and sold vehicles in the United States that were equipped with a defeat device designed to evade clean air standards. On information and belief, the defeat device enabled VW to defraud consumers and emissions testers by measuring information, including the position of the steering wheel, vehicle speed (including front-wheel versus back-wheel rotation speed) [1] and barometric pressure to identify when the vehicle was being tested as opposed to driven under normal road conditions.[2] When the defeat device sensed testing, the engine would be configured to reduce emissions to pass the tests.[3] However, while satisfying emissions standards in the testing context (including in laboratories or state testing stations), the Class Vehicles emit up to forty (40) times the amount of pollutants permitted under United States laws and regulations when in ordinary use.

19. As such, "these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them."[4]

20. The inclusion of this defeat device constitutes intentional misrepresentation to consumers and regulators regarding the amount of pollution created by the Class Vehicles, as well as their fuel efficiency and power.[5]

21. VW marketed the Class Vehicles as "clean diesel" engines that complied with federal emissions standards. VW also marketed the vehicles as possessing unique and desirable

---

[1] http://www.greencarreports.com/news/1100125_vw-diesel-emissions-recall-what-you-need-to-know-in-10-questions/page-2
[2] http://www.nytimes.com/2015/09/22/business/international/volkswagen-shares-recall.html
[3] *Id.*
[4] *See* Exhibit A at p. 2.
[5] *See id.*

quantities, touting "This ain't your daddy's diesel,"[6] and "Efficiency. Now available without compromise."[7] VW further represented that this technology "meets the highest standards in all 50 states."[8] This was not true, as the emissions technology would only be engaged during testing, and not during real-world driving.

22. In May 2014, a study was conducted by West Virginia University's Center for Alternative Fuels, Engines & Emissions. The published the results of the study, commissioned by the International Council on Clean Transportation, revealed the discrepancy in emissions standards between testing and non-test driving. The California Air Resources Board ("CARB") and EPA conducted follow up testing.

23. VW continued to mislead investigators. First, in December 2014, VW recalled nearly half a million vehicles, suggesting that a fix was needed for a software glitch without revealing the existence of the defeat device.[9] A similar letter appears to have gone out in April 2015. Finally, in September of 2015, VW admitted its duplicity, prompting the NOV from the EPA.[10]

24. Plaintiffs and the Class paid a premium price for the Class Vehicles, believing them to possess unique and desirable qualities over the less expensive base models of the same vehicles. According to recent reports, "Volkswagen charged premiums of from 7 percent to 27 percent for the diesel model."[11] What consumers received for their extra money was a vehicle that is not compliant with EPA standards and, assuming it can be brought

---

[6] http://www.businessinsider.com.au/if-vw-deceived-consumers-about-its-diesel-cars-then-it-has-a-huge-problem-2015-9
[7] http://www.huffingtonpost.com/nell-minow/volkswagens-real-victims-_b_8203744.html
[8] http://www.sustainabledirection.com/what-can-we-learn-from-the-vw-scandal/
[9] http://www.greencarreports.com/news/1100125_vw-diesel-emissions-recall-what-you-need-to-know-in-10-questions/page-2
[10] *See* Exhibit A at p. 4.
[11] http://www.bloomberg.com/news/articles/2015-09-23/volkswagen-s-other-diesel-ruse-premium-pricing

into compliance, will cost them more in fuel and be less powerful than the vehicle they were promised.

25. There is no question that VW engaged in the deceptive practices detailed herein for at least *six years*, as on September 20, 2015, VW admitted that the EPA's allegations are true. Before resigning in the wake of this scandal, VW Chief Executive Officer Martin Winterkom apologized to the public on September 20, acknowledging that VW had "broken the trust of our customers and the public."[12] Winterkom further announced that VW would stop selling its remaining 2015 model VW and Audi diesel vehicles and would not offer the 2016 diesel models for sale, some of which had already arrived in the United States.[13]

26. VW has had exclusive knowledge of the defeat devices and actively concealed their existence from Class Members. The existence of the defeat devices is material, as the defeat devices render Class Vehicles non-compliant with federal law, and produced an inaccurate portrayal of the performance and fuel economy of the vehicles.

27. Moreover, the EPA has ordered VW to recall the Class Vehicles and remove the defeat devices so that the vehicles comply with applicable laws and regulations. Doing so will substantially degrade the performance of the Class Vehicles, including fuel economy and power. Therefore, even assuming VW can alter the Class Vehicles to make them EPA-compliant (a fact not yet known), Class Members will be damaged by the loss of performance and fuel efficiency of their vehicles (causing them to pay more for gas) and related diminution of value.

---

[12] http://www.nytimes.com/2015/09/22/business/international/volkswagen-shares-recall.
[13] *Id.*

28. The existence of the defeat devices means that, had regulators been aware of them, it would have been unlawful to drive the Class Vehicles. No reasonable consumer would have purchased or leased a Class Vehicle had he or she known about the defeat devices.

29. VW has made numerous misrepresentations regarding the performance, fuel efficiency, and emissions of the Class Vehicles, representing that the Class Vehicles possess desirable features including high power, high fuel efficiency, and low emissions. As a result of these misrepresentations, Plaintiffs and the Class purchased and leased the Class Vehicles and have been harmed.

## TOLLING OF STATUTE OF LIMITATIONS

30. VW knowingly and intentionally concealed the existence of the defeat devices from Class Members, intending to deceive them. Plaintiffs and the Class were not reasonably able to discover the existence of the defeat devices until September 2015, at which point the existence of the defeat devices became national news following federal and state investigations into the Class Vehicles.

31. Any applicable statutes of limitations are tolled by VW's wrongful concealment of the defeat devices, which deceived even trained emissions officials. VW is further estopped from relying on any statute of limitation because of its concealment of the defeat devices installed in the Class Vehicles.

## PLAINTIFFS' PURCHASE OF CLASS VEHICLE

32. On or about April 15, 2014, Plaintiffs purchased a new 2014 VW Golf TDI with a diesel engine.

33. Had Plaintiffs known that the vehicle had a device that would circumvent applicable federal emission standards, Plaintiffs would not have purchased the vehicle.

34. Since the existence of the "defeat device" has been made public and Plaintiffs have become aware that their vehicle does not even come close to being a "clean diesel" vehicle as advertised, Plaintiffs have contacted their VW dealer to request that they be permitted to trade the vehicle back to VW; Plaintiffs were informed that the dealer could not accept the vehicle back under any circumstances.

35. Therefore, Plaintiffs believe that the vehicle has suffered a significant loss in value and is potentially worthless. Plaintiffs further contend that the damages suffered are a direct and proximate result of the conduct of VW as more fully described herein.

## CLASS ACTION ALLEGATIONS

36. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

37. Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3), Plaintiffs bring this action on behalf of themselves and classes of all persons similarly situated and defined as follows (collectively referred to as the "Class" or "Classes")[14]:

> All persons or entities who are current or former owners and/or lessees of a Class Vehicle purchased in North Carolina, including, without limitation: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2014 Jetta SportWagen TDI; MY 2012-2015 VW Beetle; MY 2013-2015 VW Beetle Convertible; MY 2010-2015; VW Golf; MY 2015 VW GolfSportWagen TDI; MY 2012-2015; VW Passat; and MY 2010-2015 Audi A3.

38. This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements.

---

[14] Plaintiffs reserve the right to amend the Class definition as additional information emerges regarding the makes and model years of vehicles impacted by VW's actions as alleged herein.

Plaintiffs seek to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

39. Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs believe and, on that basis, allege that the proposed class is so numerous that joinder of all members would be impracticable.

40. Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including *inter alia:*

a. Whether VW installed a defeat device in Class Vehicles;

b. Whether Class Vehicles fail to comply with applicable federal emissions laws and regulations as a result of the defeat devices;

c. Whether VW had a duty to disclose the existence of the defeat device and its consequences to consumers;

d. Whether the existence of the defeat device and its consequences would be considered material by an objectively reasonable consumer; and

e. Whether VW's conduct violates any applicable warranties;

41. Plaintiffs are members of the putative Class. The claims asserted by the Plaintiffs in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiffs and Class members' injuries, in the form of losses incurred as a result of, *inter alia*, diminution of value of the vehicles owned or leased, are the result of the same misconduct by Defendant alleged herein and Plaintiffs and Class members assert the same claims for relief.

42. Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class, as their interests are coincident with, not antagonistic to, the other Class members. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

43. Certification of the Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3) because Defendant has acted with respect to the Class in a manner generally applicable to each Class member, there is a well-defined community of interest in the questions of law and fact involved in the action, which affect all class members, and questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

44. A class action is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

45. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of the class action.

**COUNT I - FRAUD**

46. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

47. VW intentionally used defeat devices to hide the true emissions levels, performance quality, and fuel efficiency of Class Vehicles.

48. VW knew that the defeat devices used were illegal, but used them in order to hide the true emissions levels, performance quality, and fuel efficiency of Class Vehicles.

49. VW knew that using the defeat devices misled Class Members, as well as federal and state governments, regarding the amount of emissions produced by the Class Vehicles.

50. VW intentionally concealed from consumers the existence of defeat devices, since disclosing the existence of defeat devices to Class members would have resulted in Class Members deciding not to purchase or lease, and not being able to lawfully purchase, Class Vehicles.

51. VW was under a duty to Plaintiffs and the Class to disclose the existence of defeat devices because, *inter alia:*

   a. VW was in a superior position to know the true state of facts about the presence of defeat devices in the Class Vehicles;

   b. VW made partial disclosures about the quality of the Class Vehicles, their performance characteristics and their stated miles per gallon estimates without revealing the unlawful nature of the Class Vehicles, and without revealing the truth regarding the Class Vehicles' performance, fuel efficiency, and emissions; and

c. VW actively concealed the unlawful nature of the Class Vehicles, as well as their true performance, fuel efficiency, and emissions, from Plaintiffs and the Class.

52. The facts concealed or not disclosed by VW to Plaintiffs and the Class are material, as a reasonable person would have considered them important in deciding whether to purchase a Class Vehicle. In fact, if the presence of the defeat devices were disclosed to Plaintiffs and the Class, Class Members would not have been able to purchase or lease Class Vehicles lawfully. Had Plaintiffs and the Class known about the defeat devices installed in Class Vehicles, Plaintiffs and the Class would not have purchased and/or leased Class Vehicles.

53. Even after questions arose about the Class Vehicles, VW continued to conceal the presence of the defeat devices.

54. Plaintiffs and the Class justifiably relied on VW's misrepresentations and omissions regarding the performance, fuel efficiency, and emissions of the Class Vehicles. These representations and omissions were false.

55. As a direct and proximate result of VW's misconduct, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

**COUNT II – FRAUDULENT CONCEALMENT**

56. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

57. VW intentionally concealed and suppressed material facts concerning the quality and character of the Class Vehicles. As alleged in this Complaint, VW engaged in deceptive conduct to evade federal vehicle emissions standards by installing software designed to conceal the Class Vehicles' emission of pollutants.

58. The software installed in the Class Vehicles was designed with the express purpose of changing the controls activated within the engine during emissions testing such that the Class Vehicles would produce far lower emissions levels than when operating on the road under normal conditions. The result was as VW intended: vehicles passed emissions tests by eliciting false results far below the road-condition levels, which were up to forty (40) times above applicable laws and regulations.

59. Plaintiffs and the Class reasonably relied upon VW's false representations. They did not and could not have known that VW's representations were false because of the highly sophisticated methods VW utilized to conceal or suppress these material facts, deceiving even trained emissions professionals.

60. Even after questions arose about the Class Vehicles, VW continued to conceal the presence of the defeat devices.

61. VW made partial disclosures regarding the quality of the Class Vehicles without revealing the unlawful nature of the Class Vehicles, and without revealing the truth regarding the Class Vehicles' performance, fuel efficiency, and emissions.

62. These facts were material both because they concerned the quality of the Class Vehicles, including their compliance with applicable laws and regulations, but also because the representations were a significant factor in the value of the vehicles. Believing that these were fuel efficient and powerful "clean diesel" vehicles, Plaintiffs and the Class paid a premium for which they received no or greatly diminished value.

63. Plaintiffs and the Class would not have purchased the Class Vehicles, or would have paid substantially less for them, had VW not concealed or suppressed these material facts.

64. VW was under a duty to Plaintiffs and the Class to disclose the existence of defeat devices because, *inter alia:*

a. VW was in a superior position to know the true state of facts about the presence of defeat devices in the Class Vehicles;

b. VW made partial disclosures about the quality of the Class Vehicles, their performance characteristics and their stated miles per gallon estimates without revealing the unlawful nature of the Class Vehicles, and without revealing the truth regarding the Class Vehicles' performance, fuel efficiency, and emissions; and

c. VW actively concealed the unlawful nature of the Class Vehicles, as well as their true performance, fuel efficiency, and emissions, from Plaintiffs and the Class.

65. VW also had a duty to disclose because it made both general and specific affirmative representations about the qualities the Class Vehicles possessed with respect to emissions standards, including references to "clean diesel" engines, which were misleading, deceptive, and incomplete without disclosure of the defeat devices and their impact on emissions deception and the actual emissions of the Class Vehicles.

66. VW omitted facts that were material in that they directly impacted the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

67. As a direct and proximate result of VW's misconduct, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

**COUNT III – NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**

68. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

69. Plaintiffs claim relief under N.C.G.S. § 75-1.1. *et al.* which is the North Carolina Unfair Trade Practices Act.

70. The sale and/or leasing of automobiles including the Class Vehicles constitutes trade or commerce within the meaning of N.C.G.S. § 75-1.1.

71. Defendant was engaged in practices affecting commerce by selling and/or leasing automobiles including the Class Vehicles within the meaning of N.C.G.S. § 75-1.1.

72. North Carolina's Unfair Trade Practices Act prohibits unfair or deceptive acts or practices in or affecting commerce.

73. VW intentionally and willfully concealed and failed to disclose the use of illegal defeat devices in the Class Vehicles, making them non-compliant with applicable federal regulations as described herein.

74. VW made partial disclosures about the quality of the Class Vehicles, their performance characteristics and their stated miles per gallon estimates without revealing the unlawful nature of the Class Vehicles, and without revealing the truth regarding the Class Vehicles' performance, fuel efficiency, and emissions.

75. VW's conduct, as described more fully herein, included but was not limited to representations that the Class Vehicles were "clean diesel" engines when in fact they were not. VW misrepresented, among other things, the characteristics and qualities of, and

standards met by, the Class Vehicles. Such conduct was likely to, and did in fact, deceive consumers including Plaintiffs and the Class.

76. VW actions, including offering the Class Vehicles for sale or lease, occurred in the conduct of trade or commerce.

77. As a result of its actions, VW engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined by the North Carolina Unfair Trade Practices Act.

78. As a direct and proximate result of VW's misconduct, Plaintiffs and the Class have suffered and will continue to suffer actual damages in the form of overpaying for the Class Vehicles, failing to receive the benefit of their bargain, and diminution of value of the Class Vehicles.

## COUNT IV – BREACH OF WARRANTY

79. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

80. VW expressly and impliedly warranted that the Class Vehicles complied with federal emission standards, which was false at the time the Class Vehicles were sold to Plaintiffs and the Class.

81. VW disseminated warranty manuals to the Plaintiffs and Class which represented that Class Vehicles were "designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency (EPA)."

82. VW's failure to deliver vehicles to Plaintiffs and the Class that complied with federal emission standards and the representation made in VW's warranty manuals breached VW'

83.

83. As a result, Plaintiffs and the Class members were injured and damaged through their purchase of non-merchantable and unfit products.

84. Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Vehicles, or the overpayment of amounts they paid for the Class Vehicles, along with consequential damages, including the cost necessary to repair the Class Vehicles. Plaintiffs and Class members are entitled to costs and attorneys' fees as allowed by law.

## COUNT V – PUNITIVE DAMAGES

85. Plaintiffs re-allege and incorporate by reference each of the allegations stated above as though more fully stated herein.

86. As hereinabove described, VW engaged in fraud directed at (1) the federal government; (2) state governments; (3) Plaintiffs; and (4) the Class.

87. Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiffs and the Class are entitled to an award of punitive damages to punish VW for its egregiously wrongful acts and to deter VW and others from committing similar wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court as follows:

1. That after due proceedings, this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure including a declaration of Plaintiffs as representatives of the Class and Plaintiffs' counsel as counsel for the Class;
2. That Plaintiffs and the Class have and recover compensatory damages, restitution, punitive damages, and treble damages pursuant to N.C. Gen. Stat. § 75-16 upon proof of the claims for relief set out in this Complaint;
3. That Plaintiffs and the Class recover attorneys' fees as allowed by law, including but not limited to N.C. Gen. Stat. § 75-16.1.;
4. That Plaintiffs and the Class recover the costs of this action as allowed by law;
5. That Plaintiffs and the Class recover pre-judgment and post-judgment interest as allowed by law;
6. That Plaintiffs, and the Class Plaintiffs represent, have injunctive relief against VW as set forth in the Complaint;
7. That Plaintiffs and the Class recover such other and further relief as the Court may deem just and proper.
8. Plaintiffs demand a trial by jury on all issues so triable.

This the 5th day of October, 2015.

/s/ J. Michael Malone
J. Michael Malone
N.C. Bar No. 26512
Hendren & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1423
Facsimile: (919) 420-0475
Email: mmalone@hendrenmalone.com

/s/ Steven B. Epstein

Steven B. Epstein
N.C. Bar No. 17396
Poyner Spruill LLP
301 Fayetteville Street, Suite 1900
Raleigh, NC 27601
Telephone: (919) 783-2846
Facsimile: (919) 783-1075
Email: sepstein@poynerspruill.com